# UNITED STATES DISTRICT COURT

for the

Middle District of Florida

Jacksonville Division

Christopher Scott Javens,
Jean McClellan Chambers
and others similarly situated

Case No.

*(to be filled in by the Clerk's Office)*

*Plaintiff(s)*

*(Write the full name of each plaintiff who is filing this complaint. If the names of all the plaintiffs cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)*

–v–

Fresenius Medical Care International
Fresenius Medical Care North America
Fresenius Medical Care aka Fresenius Kidney Care
Benjamin C. Caldwell, Associate General Counsel
Lisa Ebert, Regional Vice President Of Operations
Jacklyn N Hehn, Director of Operations
Marla Allen, Nurse Clinic Manager
and other unidentified or unknown Individuals

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

*Defendant(s)*

*(Write the full name of each defendant who is being sued. If the names of all the defendants cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)*

## EMERGENCY COMPLAINT AND REQUEST FOR INJUNCTION

### I. The Parties to This Complaint

#### A. The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

| | | |
|---|---|---|
| Name | Christopher Scott Javens | Jean McClellan Chambers |
| Street Address | 1105 S 13th St   Apt 17 | PO Box 9712 |
| City and County | Fernandina Beach | Yakima |
| State and Zip Code | Florida    32034 | Washington 98909 |
| Telephone Number | (706) 934-1770 | 509-464-4674 |
| E-mail Address | pwttrans123@gmail.com | ar.traveler50@gmail.com |

**B.     The Defendant(s)**

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation.  For an individual defendant, include the person's job or title *(if known)*.  Attach additional pages if needed.

Defendant No. 1

| | |
|---|---|
| Name | Marla Sue Allen |
| Job or Title *(if known)* | Nurse Clinic Manager |
| | Fresenius Kidney Care Amelia Island |
| | Fresenius Medical Care North America |
| Street Address | 960144 Gateway Blvd |
| City and County | Fernandina Beach |
| State and Zip Code | Florida  32034 |
| Telephone Number | (904) 277-2511   (904) 277-2521 fax |
| E-mail Address *(if known)* | |

Defendant No. 2

| | |
|---|---|
| Name | Jacklyn N Hehn |
| Job or Title *(if known)* | Director of Operations - Jacksonville Metro |
| | Fresenius Medical Care North America |
| Street Address |  85827 Black Tern Drive |
| City and County | Yulee |
| State and Zip Code | Florida    32097 |
| Telephone Number | (904)  571-6077 |
| E-mail Address *(if known)* | jackie.hehn@fmc-ag.com |

Defendant No. 3

| | |
|---|---|
| Name | Lisa Ebert |
| Job or Title *(if known)* | Regional Vice President Of Operations |
| | North Orlando Dialysis Center - |
| | Fresenius Medical Care North America |
| Street Address | 750 Northlake Blvd Ste 1024 | 15 Julie Dr, |
| City and County | Altamonte Springs | Ormond Beach, |
| State and Zip Code | Florida    32701 | Florida    32176 |
| Telephone Number | (937) 215-0697 | |
| E-mail Address *(if known)* | lisa.ebert@fmc-ag.com | |

Defendant No. 4

| | |
|---|---|
| Name | Benjamin C. Caldwell |
| Job or Title *(if known)* | Associate General Counsel |
| | Law Department |
| Street Address | 920 Winter Street |
| City and County | Waltham |
| State and Zip Code | Massachusetts    02451-1457 |
| Telephone Number | (781) 699-5664    Mobile: (781) 697-4226 |
| E-mail Address *(if known)* | benjamin.caldwell@freseniusmedicalcare.com |

Defendant No. 5

| Name | Bill Valle  CEO |
| | Fresenius  Medical  Care  Holdings,  Inc., |
| | d/b/a  Fresenius  Medical Care North America |
| Street Address | 920 Winter Street |
| City and County | Waltham |
| State and Zip Code | Massachusetts     02451-1457 |
| Telephone Number | (781) 699-9000   800-662-1237 |
| E-mail Address *(if known)* | |

Defendant No. 6

| Name | Rice Powell CEO |
| | Fresenius  Medical  Care  International  (Fresenius  SE  &  Co. KGaA) |
| Street Address | Else-Kröner-Str. 1 |
| City and County | |
| State and Zip Code | 61352 Bad Homburg v.d.H.     Germany |
| Telephone Number | +49 (0) 6172 608-0 |
| E-mail Address *(if known)* | pr-fre@fresenius.com |

As our Chief Executive Officer (CEO), Bill Valle leads 12 vertically integrated North American business units focused on products, services, and programs that help improve quality of life for people living with kidney disease and other chronic conditions. He also sits on the Management Board of Fresenius Medical Care.

Before joining the company, Bill had 22 years of experience in the dialysis industry, serving in executive roles in sales, marketing, and business development, and as owner of several private dialysis centers.

Prior to becoming CEO, Bill was president of Fresenius Kidney Care, where he was responsible for the successful management of more than 2,200 outpatient facilities, 1,400 inpatient programs, and 800 home dialysis programs across the U.S. He also served as president of our Integrated Renal Services business, which he helped transform into a high-performance network focused on improving outcomes and reducing the costs of managing kidney disease.

Rice Powell joined Fresenius Medical Care in 1997, and as CEO of Fresenius Medical Care North America was appointed to the Management Board of Fresenius Medical Care in 2004. He has been the company's CEO since January 1, 2013. Under his direction, Fresenius Medical Care significantly extended its global leadership, identifying emerging business areas such as value-based care and home dialysis early and then expanding successfully into them.

Rice Powell said: "After 25 years with this company, and a full decade as CEO, I look back with a lot of gratitude and pride at what we achieved during this time. **Our products and services are more important than ever to our patients, and a fundamental part of their lives**. As the world's only provider of the full range of innovative therapies and products for people with renal diseases, we have outstanding prerequisites for our continued success. I want to thank all my colleagues –

https://www.freseniusmedicalcare.com/en/news/dr-carla-kriwet-to-succeed-rice-powell-as-chief-executive-officer-of-fresenius-medical-care

**B.**    **If the Basis for Jurisdiction Is Diversity of Citizenship**

1.    The Plaintiff(s)

    a.    If the plaintiff is an individual

        The plaintiff, *(name)*    **Christopher Scott Javens,  ETAL**    , is a citizen of the
        State of        Florida                        .

    b.    If the plaintiff is a corporation
        The plaintiff,  *(name)*    **NA**                        , is incorporated
        under the laws of the State of *(name)*
        and has its principal place of business in the State of *(name)*
                                .

    *(If more than one plaintiff is named in the complaint, attach an additional page providing the same information for each additional plaintiff.)*

2.    The Defendant(s)

    a.    If the defendant is an individual

        The defendant, *(name)*    **Marla Sue Allen,**            is a citizen of
        the State of *(name)*        Florida

        The defendant *(name)*    **Jacklyn N Hehn,**            is a citizen of
        the State of *(name)*    Florida

        The defendant *(name)*    **Lisa Ebert,**            is a citizen of
        the State of *(name)*    Florida

        The defendant *(name)*        **Benjamin C. Caldwell,**        is a citizen of
        the State of *(name)*    Massachusetts

    b.    If the defendant is a corporation
        The defendant, *(name)*    **Fresenius Medical Care North[1]**    , is incorporated
        the laws of the State of *(name)*    Massachusetts            , and has its
        principal place of business in the State of *(name)*        Massachusetts
        And whose parent company, **Fresenius Medical Care International**
        Aka  **Fresenius SE & Co. KGaA**
        is incorporated under the laws of *(foreign nation)*    German Democratic Republic
        and has its principal place of business in *(name)*        Bom, Hamburg, Germany

[1] FKA **National Medical Care**

*(If more than one defendant is named in the complaint, attach an additional page providing the same information for each additional  defendant.)*

3.      The Amount in Controversy

The amount in controversy – the amount the plaintiff claims the defendant owes or the amount at stake – is more than $75,000, not counting interest and costs of court, because *(explain)*:

Amount at stake is my life, which to quantify is extremely difficult;  The Clinic's Denial of Services is a jeopardy to my lifeline

1.      My attempt is based on the average earnings for a 50 yr old male with age expectancy of 80 yrs ($60000 @ 30 yrs = $1,800,000 )

2.      Additionally, medical expenses of approximately $60,000 per month ($21,600,000 /year) As I come to know, I will be able to return to this specific Clinic without repercussions after the conclusion of this action. I will need to arrange for my trreatment at another Clinic, the closest being in the North Jacksonville area of Dunn Ave, which will require transportation at least 3x a week with additional expenses of $37,500 per year for tranportation expenses.

3.      With this clinc based on instructions from the Corporate entity, is insisting/ordering  I find other clinic treatment options; considering my restrictions of transportation, resources etal, should be ordered to supply my person with appropriiate transportation to the Clinic run by DaVita located on Dunn Ave.   *See exhibit Letter of Discharge"

4       Taking into consideration the present lack of public para-transportation and the lack of non-emerginecy trasportation available for Nassau County, I can not afford to hire transportation on my very limited resources. therefore since the 'Care Team' at this clinic has taken the action of discharging me from the ONLY clinic I have access to, it would be only right and fair this clinic location provide me wiith the necessary transportation to another clinic location in addition to any other damages ordered by the Court.

**Fresenius Medical Care North America** part of **Fresenius Medical Care International** (FKA **National Medical Care**) has a strong appearance of a vertical monopoly,  Service, doctors, manufacturing, clinics that are part of and controlled by "12 vertically intergrated companies" covering all facets of Kidney products, services and treatment care..  with any research about the company, I have not been able to discover if any of the 12 companies are regarded as a seperate entities of the corporation whole.  This stucture runs afoul of the expectations of equal busiiness competition expeically when any doctor, hospital or clinic sponsored by this company is *required* to refer patients laterally to another entity contolled by the parent company.  A close look at the structure thru the eyes of the many legal cases attacking this conglomerate's many facets, leads an everyday person to strongly question how much of a monopoly this corporation holds in this Kidney Care industry in the United States.  (As the settlement of a large Federal Case in 2000 with Eric Holder as the lead Federal Attorney involving serveral State AGs, 4 of the vertial companies where barred from participastion in any Medicare or Medicaid program for over billing and fraudulent practices which appears to be the reason the parent company changed names and is still using the same proctices since I requessted a billing statement which was ignored, I also believe this practice has continued to this day as reserach by my sighted research partner has revealed many cases of the same order practically on a yearly basis has occured against the company)

### III.    Statement of Claim

Write a short and plain statement of the claim.  Do not make legal arguments.  State as briefly as possible the facts showing that each plaintiff is entitled to the injunction or other relief sought.  State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct.  If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

A.    Where did the events giving rise to your claim(s) occur?

Fresenius Kidney Care of Ameliia Island

960144 Gateway Blvd

Fernandina Beach, Florida    32034

(904) 277-2511            (904) 277-2521 fax

B.    What date and approximate time did the events giving rise to your claim(s) occur?

Events and Dates beginning shortly after my initially having need to attend the clinic for dialysis treatment commencing in August 2021, slowly building with minor incidents in approximately Oct 2021 over the accuracy and certification of the clinic scale,  combined with questions over the attendance of the Clinic Manager, Marla Allen; with repeated complaints of medical issues after treatment, which the clinic personel were and are ignoring.  Combine these incidents with my having to sign a 'behavior contract' which to my knowledge I am the only patient who has been required to do so, makes many of the actions by clinic personell, beyond the pale for treatment of any patient.  Since the supposed corporate focus is patient centric but in acutallity is not focused on the individual patient center, these repeated and continuing incidents have worsened after my having experienced another mild stoke  Jan 19 2022. This incident put me in the hospital for approximately 2 days with affect of my respiratory becoming more restrictive with episodic distress thus making the wearing a face mask very trying; requiring me to use a rescue inhaler allong with oxygen periodically.  This has precipitated my experiencing a suffocating affect from having to wear a mask in the Clinic or anywhere else for that matter. (This Clinc is the ONLY location where I am *FORCED* to wear a mask, the Clinic WILL NOT grant me an exception for medical reasons) I finally, even though from my experience of the past months did not give me much hope of being heard, I plucked up the courage to speak out about my issues with confrontation occuring on the dates of Apr 20, Apr 22 & Apr 29, 2022.  What has arisen from these dates is a very evident singling out of my person for special derogatory treatment by staff in the clinic allong with the sudden use of security *only* when I am present.  Members of the Clinic staff are alleging improper language and agressive behavior etc.. BUT, I have not threatened anyone, I *have* voiced my strong opinion about the treatment proticol of my person to be most unwelcome.  I will not be intimidated by anyone just because of my physical condition nor will I be coerced into any  ambush style manipulative meeeting so the supervisory leadership of **Fresenius Medical Care North America** have the opportunity to cover up their discrimination,. denial of life giving services  and overall mistreatment of my person.  One of the latest incidents is a traveling Tech "Shonda" accusing me of being 'racist' because I said to her "Don't discriminate against me" this was followed by her paying unwanted haarrasing attention to me, telling me I could not have my blanket over my head, poking me, basically very unwanted and unnecessary attention which is a deviation from commmon practice of the clinic.

Followed on May 20 by the latest manifesto of "'you have 30 days to move to another clinic". *There is not* another clinic reasonably accessible to me as I do not drive since I am legally blind, and **DO NOT HAVE** any reliable transportation to one of 2 clinics at least 45 minutes driving time from me which this clinc is very much aware of.

As of 25 May, I was 'served' with a Notice of Discharge" by suspect means such as an envelope being stuffed into my bag and a UPS envelope being dropped at my residence door which on the shipping label required a signature.

Since I now have have short term memory recall issues due to my strokes, these are the most aggregous incidents I am able to recall many details and dates which I have to rely on family members to assist me in many ways.

C.    What are the facts underlying your claim(s)? *(For example: What happened to you? Who did what? Was anyone else involved? Who else saw what happened?)*

I have come to believe, part of the animosity from Marla Allen is based on my complaint about the veracity of the Clinic scale, along with her lack of attendance to her employment duty. Since I 'blew the whistle' on her about the above time line issues as well as complaining about the lack of concern for my ongoing medical reactions to the dialysis treatments combined with the commencement of respiratory issues from HAVING to wear THEIR mask instead of a personal one, ( I feel like I am suffocating, struggling to get my breath) all have a basis in the instructions given to the Clinic staff, the sudden use of security persons just because of my attendance in the Clinic, the intentional confrontations by the clinic staff to force me to shut up followed on the occasions of the April dates mentioned with feeling totally intimidated into leaving without treatment on the first two occasions. Culminating in out right denial of treatment on the 29th of April witnessed by Nassau Transit Bus Driver, Deb and off duty Baker Sheriff's Reserve Deputy, Kenneth E.  The behavior of being "singled out" has continued and is ongoing as I have need to attend the clinic 3 times a week.  I have been threatened with arrest for just speaking my objection to specified treatment even though I am in a wheelchair as well as another client in similar circumstances, Russell, is just one example of the objectionable treatment I am being subjected to.

IT has come to light other persons in the corporate structure are also behind the actions of Marla Allen, having communicated with her on the issue; issuing instructions to protect the corporation from "liability". The known participants are named as defendants in this action, all having a significant part to play in the discrimination and denial of life giving services at the *only* Clinic I have access to because of physical, eyesight and transportation restrictions.  The method being used is to divert focus from these person onto me, charging aggreesion, intimidation and many other unacceptable behaviors which are examples of THEIR treatment of my person,.. PERFECT EXAMPLE of blame deflection with protect the corporation at all costs..

**IV.    Irreparable Injury**

Explain why monetary damages at a later time would not adequately compensate you for the injuries you sustained, are sustaining, or will sustain as a result of the events described above, or why such compensation could not be measured.

Without sufficient monetary damages, considering my limited resources.  I would not be able to access an alterative ongoing treatment location.  The atmosphere within the Fresenius Amellia Island Clinic where I presently receive treatment is becoming very toxic and will continue to increase with my quality of care becoming extremely marginal.  The attitude of the staff who support Manager, Marla Allen is very evident and the few permanent employees at this location are avoiding conflict for fear of losing employment.

If I continue to utilize the services of this Clinic, I will be putting my tenable life in further jeopardy as there will be a next time the treatment I am undergoing from the staff has repeated and will continue to repeat..  It is evident this clinc does not follow the published Patient Rights   (See Referece and Exhibit pages) but accuse patients of behaving adversely for doing what is in their best interest. and established prescribed protocol.

It is my understanding and contention other patients at this clinc have also experienced portions of the unconsciable and undesirable treatment I have.  One person who has spoken to me of his issues, Larry Walker has been a dialysis patient for 14+ years, related to me an ongiing issue with calibration of both the wieght scale and the  dialysis machines.  The weight scale variations I noticed within 6 weeks of my having started going to the clinic. on several times when I weighed in and out I observed a differemce in the weight with the outgoing weight being higher than the inbounnd wieght as much as 2 Kg..

If the dialysis machines are not maintained in optimum calibratuion, the end result is several undesirable affects on the patient, which are addressed in the reference material and exhibits attached to this complaint. (Upon checking with another similar clinic about maintenance protocol, I was informed they are required to have these pieces of equipment checked on a monthly basis not semi-annually in the case of the scale or annually in the case of the dialysis machine)

I have come to firmly believe this clinc has a chronic lack of patient centric focus, does not listen to the patient in  expalaning what is not working for them, does not believe in dynamic changes of the humam physiology and is very rigid in the treatment protocol for EVERY patient.

V.      **Relief**

State briefly and precisely what damages or other relief the plaintiff asks the court to order.  Do not make legal arguments.  Include any basis for claiming that the wrongs alleged are continuing at the present time.  Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts.  Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

In addition to the relief previously requested, it very much appears immediate injunctive relief is in order to suppress any further actions against my person as long as I have to attend this clinic in order to maintain any quality of life.

Further, an investigation into the practices of this clinic, the lack of scheduled maintence and calibration of the clinic dyalsis machinery, all practices which have the appearance of being approved by the corporate managerial chain of command, blessed by the top corporate structure (several previous and ongoing federal district cases support this attitude including actions by the Florida State AG with investigations by regulatory agencies into this specific clinic because of a death of a patient in 2019).  As well as a presently open case brought by the State of Maryland.

Additionally, an investigation into the policies, practices and maintenance of equipment as well as requiring specified personnel to complete re-education in ethics and patient rights is very much in order.  Then considering the method by which I came to this clinic was by a concerted referral in direct violation of Florida and Federal Statues already confirmed and adjudicated in 2013 by the Northern Florida District Court then upheld by the 11th Circuit Court of Appeals is also very much in order.

The latest action by this clinic, the "Care Team", supported by Corporate without consideration of patient specifics stated in the 'Discharge' letter is tantamount to a sentence of death, a gross violation of all social and legal standards. This is the basis for the urgent request for an injunction forbidding any further action detrimental to my person until the full adjudication of this action can take place with the requested outcome of a permanent injunction against the clinic, personnel and company.

The over whelming prima facie historical case evidence is Fresenius Medical Care Holdings, Inc., d/b/a Fresenius Medical Care North America and its 12 branches of integrated subsidiary companies, have a systematic corporate policy of doing whatever it takes to make a profit to the detriment of the many individual patients who DEPEND on the life giving services being provided.   So much so even if one individual patient threatens to expose the shady practices,, any and everything will be done to protect the whole corporate structure regardless of the consequences to the patient.

**VI.**     **Certification and Closing**

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

**A.**     **For Parties Without an Attorney**

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served.  I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:              30  May 2022

Signature of Plaintiff        _____

Printed Name of Plaintiff              Christopher S Javens*

*Pictorial Signature given to Jean McClellan-Chambers before loss of eyesight*

Signature of Plaintiff

Printed Name of Plaintiff              Jean McClellan Chambers

Date of signing:

Signature of Attorney        _____

Printed Name of Attorney     _____

Bar Number                   _____

Name of Law Firm             _____

Street Address               _____

State and Zip Code           _____

Telephone Number             _____

E-mail Address               _____

Fresenius Medical Care Holding, et al v.Tucker, et al, No. 11-14192 (11th Cir. 2013)
Case: 11-14192    Date Filed: 01/10/2013    Page: 1 of 23
Appeal from the United States District Court for the Northern District of Florida
Before DUBINA, Chief Judge, CARNES and GILMAN,  Circuit Judges.  DUBINA, Chief Judge

---

**Summary:**
Plaintiffs challenged Florida's "Patient Self-Referral Act of 1992" (the Florida Act), Fla. Stat. 456.053, which prohibited Florida physicians from referring their patients for services to business entities in which the referring physicians have a financial interest. The court concluded that the conflict preemption doctrine did not apply, and the exemptions in federal law allowing physicians serving end-stage renal disease patients to engage in self-referral did not preempt Florida's more restrict law prohibiting such conduct. The court also concluded that the Florida Act did not discriminate against interstate commerce, nor did it impose a burden on interstate commerce that was clearly excessive when compared with the law's putative local benefits. Therefore, the Florida Act did not violate the dormant Commerce Clause. Further, plaintiffs' substantive due process claim failed to survive rational basis scrutiny, and an equal protection claim would fail as well. Accordingly, the court affirmed the judgment.

---

This case involves a constitutional challenge to Florida's "Patient Self-Referral Act of 1992" (the "Florida Act"), FLA.STAT. § 456.053, which prohibits Florida physicians from referring their patients for services to business entities in which the referring physicians have a financial interest.  Appellants Fresenius Medical Care Holdings, Inc., DVA Renal Healthcare, Inc., and Davita, Inc. (collectively "Appellants") sued the Secretary of the Florida Department of Health, the members of the Florida Board of Medicine, and the members of the Florida Board of Osteopathic Medicine (collectively "Florida") seeking declaratory and injunctive relief.  Appellants allege that the Florida Act is unconstitutional because it is (1) preempted by federal law, (2) violative of the dormant Commerce Clause, and (3) violative of substantive due process.  The district court found no constitutional violation and granted summary judgment in favor of Florida.

For more on this case:
https://law.justia.com/cases/federal/appellate-courts/ca11/11-14192/11-14192-2013-01-10.html


(From my experience, it appears this company has not ceased their business practice of quietly requiring sponsored medical professionals to inter-company agency referral nor encouraging linked partner hospitals and other medical outlets to refer patients in need to Fresenius owned and run facilities)

FIRST AMENDED COMPLAINT
UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION

Civil Action Number 14 -CV-665- GLR

       Plaintiff and qui tam Relator Martin Flanagan ("Relator," "Plaintiff-Relator," or "Mr. Flanagan"), through his counsel and on behalf of the United States of America, in this First Amended Complaint against Defendant Fresenius Medical Care Holdings, Inc., d/b/a Fresenius Medical Care North America ("Defendant," "FMCNA ," "FKC," "FMC," or " Fresenius"),

This action is brought by Relator Martin Flanagan on behalf of the United States of America to recover treble damages and civil penalties under the False Claims Act ("FCA"), 31 U.S.C. §§ 3729 et seq. Relator seeks to recover damages and penalties arising from FMCNA's fraudulent claims for reimbursement submitted to Medicare and state Medicaid agencies (collectively, "Government Health C are Programs").

Fresenius defrauded the government by, inter alia:
• Knowingly offering remuneration to hospitals in the form of no-cost or below-cost items and services (including but not limited to free discharge planners) in connection with the provision of inpatient dialysis care to ESRD patients , at least one purpose of which was to secure referrals from those hospitals for patients who would enter outpatient care at Fresenius dialysis clinics , in violation of the Anti-Kickback Statute, 42 U.S.C. § 1320a-7b(b) ("AKS") and which did not meet safe harbor requirements; and• In violation of the AKS (and which did not meet safe harbor requirements), knowingly offering remuneration to physicians (at least one purpose of which was to reward or induce referrals from those physicians to Fresenius' network of outpatient clinics), including: medical director agreements ("MDAs") that were well above fair market value ("FMV") or commercially unreasonable; free patient education services and/or free or below-cost practice management services (including free recruitment services for new nephrologists entering the workforce); lease agreements that were commercially unreasonable and not at FMV ; and joint venture agreements ("JVAs") in outpatient dialysis clinics that were commercially unreasonable and not at FMV.

Case 1:14-cv-00665-GLR Document 51 Filed 02/05/21



**FRESENIUS
MEDICAL CARE**



## FMCNA PATIENT RESPONSIBILITIES

G

**You Have the Responsibility to:**

- **Speak Up to Help Us Protect Your Health and Safety**

- **Actively Participate in Your Care Plan**

- **Choose Healthy Behaviors**

- **Get Your Full Dialysis Treatment**

- **Be Considerate of Other Patients and Staff**   *When being considerate takes a second seAt to staff intimidation and inconmsidrate treatment, I have the RIGHT TO SPEAK UP!!!*

- **Provide Updated Information to Staff**

### What Responsibilities Do You Have?

You are the most important person on your health care team. This is because a lot of what determines how well you feel and the quality of your life depends on the daily decisions that you make.

### You have the responsibility to:

Bt

### Speak Up to Help Us Protect Your Health & Safety

- Tell the staff if you don't understand your treatment plan or any instructions.

- Tell the staff if something doesn't feel or look safe, or right.

- Involve your family or significant others in your care, when needed.

- Inform the staff if you have had health problems since your last treatment.

- Actively participate in your plan of care.

### Choose Healthy Behaviors

- Take charge of your healthcare, to the best of your ability.

- Learn as much as you can about your healthcare needs.

S-CS.

- Cooperate, to the best of your ability, with your diet, medication, and dialysis treatment plans.

- Take care of, protect, and learn about your dialysis access - it's your lifeline!

**The Effect of Calibration on Hemodialysis Machines on Adequacy of Dialysis**

Abdalla, Abdalla Salih; Supervisor ,- Alnazier Osman Mohamed

URI: http://repository.sustech.edu/handle/123456789/1360

Date: 01 Jul 2012

Abstract:

Dialysis machines are artificial kidneys that perform some kidney functions for patients who have renal failure and they used to clean the blood and balance its constituents. **The machine maintenance and calibration are extremely important in evaluation of adequacy of hemodialysis and in assessing dialysis session performance**. **Patients under dialysis sometimes suffer from allergen** and complain that the treatment is not effective. They always complain, so the study proposed to see whether these monitor are working properly or not, and what are the required for these monitors to work well. The study was conducted on hemodialysis machines in Gezira State to evaluate the efficiency of the dialysis dose before and after calibration. Samples of ten machines were selected randomly from Gezira hospital for renal diseases and surgery and Abu Aushar dialysis center. Eight blood samples were taken from patients on twice – per – week dialysis regimens pre and post dialysis sessions before calibration and the same sample size were taken after calibration. The samples were analyzed for urea and the study compared the results post dialysis before and after calibration for the purposes of the research. The two major methods used for evaluation the adequacy of hemodialysis are URR and Kt/v. The minimum value for urea reduction ratio (URR) is 65% and 1.2 for Kt/v. Data was analyzed using the statistical analysis (SPSS-15) and (Microsoft Excel 2007), and **the analysis results showed that there is an improvement in the dialysis outcome after calibration comparing with the minimum values of URR (65%) and Kt/v (1.2)**. But statistically, there was no significant different before and after calibration in the dialysis dose.

Sudan University of Science & Technology

The Effect of Calibration on Hemodialysis Machines on Adequacy of Dialysis


**UROLOGICAL HEALTH  CHRONIC KIDNEY DISEASE**


5 Complications of Hemodialysis

Causes, symptoms, and essential prevention tips


Hemodialysis is the most common form of dialysis in the United States. It involves removing blood from an access point in a vein, then cleaning the blood of toxins and excess fluids before returning it to the body.[1]


Hemodialysis is meant to replicate the function of the kidneys, but it is an inexact science. If the speed of the procedure is too aggressive, or the individual being treated doesn't adhere to the proper dietary or fluid restrictions, the homeostasis (balance) of the body chemistry can be thrown off, causing side effects and complications

The creation of an artificial access point in the body also poses a risk in that the closed vascular system is now open. Infection is the most common concern, but not the only one.

Here are just a few of the complications that a nephrologist will watch out for (and try to prevent) if you are on hemodialysis.

**Hypotension**

Hypotension is the medical term used to describe low blood pressure. This is a common occurrence during hemodialysis in which the dose and speed of the procedure can cause the too-rapid removal of fluids from the blood.  By doing so, the internal pressure in the blood vessels will invariably drop, sometimes precipitously. This can cause symptoms such as:

- ✓ Abdominal discomfort
- ✓ Yawning or sighing
- ✓ Nausea
- ✓ Vomiting
- ✓ Muscle cramps
- ✓ Restlessness
- ✓ Anxiety
- ✓ Dizziness or fainting
- ✓ Clammy skin
- ✓ Blurred vision

A severe drop in blood pressure also increases the risk of blood clots. If left untreated, the formation of clots may require additional surgery to repair the access point and, in some cases, lead to stroke, seizures, and heart damage.

Electrolyte Abnormalities

Hypokalemia

Infection

Fluid Overload

Fluid overload, also known as hypervolemia, occurs when the kidneys are no longer able to remove enough fluid from the body.  **If the dialysis machine is not calibrated correctly, hypervolemia may persist despite treatment.**

Dialysis Disequilibrium Syndrome

For more info     https://www.verywellhealth.com/complications-at-hemodialysis-cramps-aches-pains-more-3954362

The following is taken from Fresenius' own maintenance book for their machines

If this procedure is only completed ONCE a year, how can anyone be assured the calibration is still within specs considering the amount of constant operation these machines are required to undergo?

---

2008T Calibration Procedures
P/N 508032 Rev. H

---

## 1.0    INTRODUCTION

Calibration involves doing two things.  One is making mechanical adjustments, both to the hydraulics and to the electronics.  The other part of calibration is storing data in the electronic memory in the machine.  The machine uses an EEPROM, which stores calibration data until it is purposely erased and replaced with new data.  To store new data in the EEPROM, the machine is operated in Service Mode as described in Section 1.2. Service Mode also shows important data that is needed to make some of the mechanical adjustments.

Perform the calibration procedures only when needed following repairs, or if the machine fails the performance tests included in the Preventive Maintenance Procedures.  Do not re-calibrate the machine routinely to verify normal operation.  Instead, use the performance tests included in the Preventive Maintenance procedures to ensure the machine is working properly.

If the machine behaves erratically during calibration, perform the Preventive Maintenance procedures.  Clogged filters, leaky O-rings and similar items routinely corrected during Preventive Maintenance are a common cause of intermittent problems.  When preparing to re-calibrate the Blood Leak Detector, either perform a bleach rinse first or verify that it has been done recently.  The bleach rinse is required to clean the detector tube.



**Warning!**  Once a chemical rinse is performed, the only selection the machine will allow is a mandatory rinse.  This information is stored on the functional board. Therefore, if the functional board and EEPROM are swapped out together when troubleshooting a calibration or machine problem, the machine must be rinsed prior to releasing it back into service.

**About Fresenius Medical Care North America and Parent Company**

Fresenius Medical Care AG & Co. KGaA is a German healthcare company which provides kidney dialysis services through a network of 4,171 outpatient dialysis centers, serving 345,425 patients. *Wikipedia*

CEO: Rice Powell (Jan 1, 2013–)
Founded: 1996
Number of employees: 122,635 (2022)
Revenue: 17.62 billion EUR (2021)
Subsidiaries: Renal Care Group, NxStage, MORE
Headquarters: Germany, Bad Homburg, Germany
freseniusmedicalcare.com

**OCTOBER 27, 2004**

**US subsidiaries of Fresenius Medical Care receive subpoenas**

Fresenius Medical Care AG ("the Company") (Frankfurt Stock Exchange: FME, FME3) (NYSE: FMS, FMS-p), the world's largest provider of Dialysis Products and Services, today announced that its wholly owned subsidiaries, Fresenius Medical Care Holdings, Inc. and Spectra Renal Management, received on October 26 subpoenas from the U.S. Department of Justice, *Eastern District of New York*. The subpoenas require production of a broad range of documents relating to the company's operations, with specific attention to documents relating to testing for parathyroid hormone (PTH) levels and vitamin D therapies. ..... https://www.fresenius.com/node/4644

Fresenius Medical Care AG is the world's largest, integrated provider of products and services for individuals undergoing dialysis because of chronic kidney failure, a condition that affects more than 1,300,000 individuals worldwide. Through its network of approximately 1,590 dialysis clinics in North America, Europe, Latin America and Asia-Pacific, Fresenius Medical Care provides Dialysis Treatment to approximately 122,700 patients around the globe. Fresenius Medical Care is also the world's leading provider of Dialysis Products such as hemodialysis machines, dialyzers and related disposable products. For more information about Fresenius Medical Care, visit the Company's website www.fmc-ag.com.

‣ Fms USA Inc is located in Hoffman Estates, IL, United States and is part of the Navigational, Measuring, Electromedical, and Control Instruments Manufacturing Industry.
‣ Fresenius Kidney Care;
‣

| Patient Care | Physician Practice Support | Products |
|---|---|---|
| Kidney Care<br>Vascular Access Care<br>Value Based Care<br>Laboratory & Diagnostic Services<br>Renal Pharmacy | Practice Management<br>Practice Technology<br>Cardiology Lab<br>Partnerships<br>Renal Research<br>Physician Recruitment<br>Apheresis Services | In-Center Dialysis Equipment<br>2008T BlueStar Hemodialysis Machine<br>AquaBplus<br>AquaC UNO H<br>Go to All In-Center Dialysis Equipment<br>Home Dialysis Products<br>Critical Care<br>Fluid Management<br>Disposables<br>Pharmaceuticals |

*What aspect of End Stage Renal Kidney treatment focus is Fresenius Medical Care not covering??*

## Lawsuits Against Fresenius Medical North America

Parent Company Name:  Fresenius
Ownership Structure:  publicly traded (ticker symbol NYSE: FMS)
Headquartered in:  Germany
Major Industry:  healthcare services
Specific Industry:  healthcare services
Penalty total since 2000:  $1,116,007,384
Number of records:  30

| Top 5 Offense Groups (Groups Defined) | Penalty Total | Number of Records |
|---|---|---|
| Government-contracting-related offenses | $573,912,499 | 5 |
| Safety-related offenses | $305,063,355 | 11 |
| Competition-related offenses | $231,715,273 | 2 |
| Consumer-protection-related offenses | $3,500,000 | 1 |
| Employment-related offenses | $1,695,810 | 10 |

| Top 5 Primary Offense Types | Penalty Total | Number of Records |
|---|---|---|
| False Claims Act and related | $573,912,499 | 5 |
| Drug or medical equipment safety violation | $305,000,000 | 3 |
| Foreign Corrupt Practices Act | $231,715,273 | 2 |
| Privacy violation | $3,500,000 | 1 |
| Wage and hour violation | $1,571,924 | 3 |

| Year | Company | Primary Offense Type | Agency | Penalty Amount |
|---|---|---|---|---|
| 2000 | Fresenius Medical Care (fka National Medical Care) | *False Claims Act* and related | DOJ_CIVIL | $486,000,000 |
| 2000 | Fresenius Medical Care North America | *False Claims Act* and related | MULTI-AG | (*) $7,600,000 |
| 2001 | Fresenius Medical Care | Labor relations violation | NLRB | $13,400 |
| 2001 | Fresenius Bio Medical Applications | Labor relations violation | NLRB | $10,990 |
| 2001 | Renal Care Group Mid America | Workplace safety or health violation | OSHA | $6,000 |
| 2002 | Fresenius Medical Care | *False Claims Act* and related | AR-AG | $69,907 |
| 2003 | Fresenius Medical Care | Labor relations violation | NLRB | $11,200 |
| 2003 | Fresenius Medical Care | Workplace safety or health violation | OSHA | $12,680 |
| 2004 | Fresenius Medical Care, Inc., d/b/a Fresenius Medical Care, North America | Labor relations violation | NLRB | $6,018 |

| Year | Company | Violation | Agency | Amount |
|------|---------|-----------|--------|--------|
| 2005 | Bio-Medical Applications of Texas, Inc. | Wage and hour violation | WHD | $58,957 |
| 2005 | Spectra Laboratories | Workplace safety or health violation | OSHA | $7,400 |
| 2007 | Fresenius Medical Care | Benefit plan administrator violation | EBSA | $50,001 |
| 2007 | Renal Care Group, Inc. | Employment discrimination | EEOC | $21,000 |
| 2007 | Fresenius Medical Care North America | Wage and hour violation | WHD | $532,967 |
| 2007 | Fresenius Medical Care | Labor relations violation | NLRB | $11,277 |
| 2009 | Fresenius Medical Care North America | Workplace safety or health violation | OSHA | $5,355 |
| 2010 | Fresenius Medical Care DBA Trublu Logistics | Workplace safety or health violation | OSHA | $6,000 |
| 2011 | Renal Care Group et al. | *False Claims Act* and related | USAO | $82,642,592 |
| 2011 | Fresenius USA Mfg INC | Workplace safety or health violation | OSHA | $5,000 |
| 2013 | Fresenius | Wage and hour violation | Private lawsuit-federal | $980,000 |
| 2014 | Fresenius Medical Care | Workplace safety or health violation | OSHA | $8,000 |
| 2015 | Fresenius Medical Care | *HHS civil monetary penalties* | HHSOCR | $120,447 |
| 2016 | Fresenius Medical Care North America | Drug or *medical equipment safety* violation | private ** lawsuit-federa | $250,000,000 |
| 2017 | Fresenius USA Manufacturing INC. | Workplace safety or health violation | OSHA | $12,920 |
| 2018 | Fresenius Medical Care North America | Privacy violation | HHSOCR | $3,500,000 |
| 2019 | Fresenius Medical Care AG & Co. KgaA | Foreign Corrupt Practices Act | DOJ_CRIMINAL | $84,715,273 |
| 2019 | Fresenius Medical Care AG & Co. KgaA | Foreign Corrupt Practices Act | SEC | $147,000,000 |
| 2019 | Fresenius Medical Care Holdings Inc. | Drug or *medical equipment safety* violation | KY-AG ** | $5,000,000 |
| 2019 | Fresenius Medical Care Holdings Inc. | *False Claims Act* and related | USAO | $5,200,000 |
| 2021 | Fresenius Kabi Oncology Limited | Drug or *medical equipment safety* violation | DOJ_CIVIL ** | $50,000,000 |

**\*\* 2016**
**Case Name**: In Re: Fresenius Granuflo/Naturalyte Dialysate Products Liability Litigation
**Primary Offense:** drug or medical equipment safety violation
**Secondary Offense:** product safety violation
**Violation Description:** Fresenius agreed to pay $250 million to settle multi-district litigation alleging that two dialysis drugs caused dangerous side effects:
**Court:** District of Massachusetts
**Link to PACER Case Docket** (must be logged in):  Https://ecf.mad.uscourts.gov/cgi-bin/DktRpt.pl?150456

**2019**
**Company:** Fresenius Kabi Oncology Limited
**Primary Offense:** drug or medical equipment safety violation
**Violation Description:**   Indian drug manufacturer Fresenius Kabi Oncology Limited (FKOL) agreed to plead guilty to concealing and destroying records prior to a 2013 U.S. Food and Drug Administration (FDA) inspection and pay $50 million in fines and forfeiture.
Source of Data:   Https://www.justice.gov/opa/pr/indian-cancer-drug-manufacturer-agrees-pl...

**2021**
**Company:** Fresenius Medical Care Holdings Inc.
**Primary Offense:** drug or medical equipment safety violation
**Violation Description:** Fresenius agreed to pay more than $5 million in settlement of allegations it violated Medicaid guidelines by failing to warn doctors and dialysis clinics that its dialysis product GrunuFlo could cause dangerously increased bicarbonate levels.
**Agency:** Kentucky Attorney General
**Source of Data:** Https://kentucky.gov/Pages/Activity-stream.aspx?n=AttorneyGeneral&prId=719

On February 5, 2021 a long-time former Fresenius Medical Care North America ("Fresenius") employee, Martin Flanagan, filed a qui tam relator amended complaint ("Complaint") against Fresenius alleging that the company had entered into arrangements with hospitals and physicians in order to secure dialysis patients referrals for Fresenius outpatient dialysis clinics, and that such arrangements violated the Federal False Claims Act ("FCA") and the Federal Anti-Kickback Statute ("AKS").

https://www.jdsupra.com/legalnews/whistleblower-lawsuit-against-fresenius-6291925/

---

### United States v. Fresenius (National Medical Care)*

### Boston, Massachusetts

### January 19, 2000

......... Excerpt from full document

United States filed criminal charges against three divisions of National Medical Care, which is headquartered in Lexington, Massachusetts and is the largest provider of dialysis services in the United States. The Medicare program and other federal and state health care programs pay for dialysis services to patients with end stage renal disease, a life-threatening condition that inhibits the operation of the patient's kidneys and affects many people in the United States.

The three divisions: LifeChem, Medical Products and Homecare, have agreed to plead guilty to various criminal charges. LifeChem has agreed to plead guilty to conspiracy to submit false claims for certain lab tests; Medical Products will plead guilty to conspiring to offer and pay kickbacks to induce dialysis facilities to order laboratory blood testing services from LifeChem to be paid by Medicare; and Homecare has agreed to plead guilty to obstructing government agencies in the administration of various health care and health insurance programs including Medicare.

National Medical Care will pay a total of $101 million in criminal fines -- $51.8 million for the LifeChem and Medical Products' criminal conduct, and $49.3 million in criminal penalties for the Homecare conduct. Each of these fines exceeds the largest prior health care criminal penalty paid before.

Also on the criminal side, two high-level executives already have pleaded guilty to felony crimes, and three other executives currently are under indictment. Criminal prosecutions against individuals are especially important both in terms of our commitment to hold persons accountable for health care fraud and to serve as a deterrent to others who have responsibility for federal health care dollars.

In addition, the divisions of National Medical Care that plead guilty will be excluded permanently from participation in the Medicare program under an agreement subject to court acceptance.

https://www.justice.gov/archive/dag/speeches/2000/nmichaelhealthremarks.htm

*Fresenius (National Medical Care) is KNA  Fresenius Medical Care Holdings, Inc., d/b/a Fresenius Medical Care North America

*07 Jul 1997   Fresenius Medical Care North America has bought Spectra Laboratories,. Fresenius Medical Care's existing laboratory business, LifeChem, offers testing services to some 61,000 patients.  LifeChem is DBA Spectra Labs

**August 7, 2017**
**FMC set to buy home dialysis systems manufacturer NxStage**
The world's largest provider of dialysis products, Fresenius Medical Care (FMC), has agreed to buy US-based home dialysis systems manufacturer NxStage for $2bn. The deal, which pending regulatory approval is set to close in 2018, will see FMC North America acquire all outstanding shares of NxStage.

In a statement discussing the acquisition, Rice Powell, CEO of FMC, said: "Combining our two companies [will] strengthen and diversify our business in the US and help meet the evolving needs of our patients."
By acquiring NxStage, FMC will be hoping to increase its share of the growing home care market ...
Information Source: FMC set to buy home dialysis systems manufacturer NxStage

**Freseniius Medical Priducts is now Fresenius Medical Services**

 Fresenius outlines plans to expand extra corporeal care portfolio to hearts, lungs
 Trump orders overhaul of kidney disease payments and treatment
DaVita maintains over 2,800 brick-and-mortar dialysis centers in the U.S., while Fresenius' North America subsidiary owns more than 2,500 on the continent—together accounting for more than 80% of the entire U.S. market.

**21 Mar 2022**

- Creation of new company combines strengths of three leading value-based care specialists
- Execution on strategic expansion along the renal care continuum significantly expands Fresenius Medical Care's total addressable market in the U.S. from around $50 billion to around $170 billion
- Establishing independent and integrated value-based care offering in-line with FME25 plan of refining and further growing future Care Delivery segment in the U.S.

Fresenius Medical Care, the world's leading provider of products and services for individuals with kidney diseases, announced today it has entered into a binding agreement to create an independent new company that combines Fresenius Health Partners, the value-based care division of Fresenius Medical Care North America, with InterWell Health, the leading physician organization driving innovation in the kidney care space in the U.S., and Cricket Health, a U.S. provider of value-based kidney care with a leading patient engagement and data platform.

The merger brings together Fresenius Health Partners' expertise in kidney care value-based contracting and performance, InterWell Health's clinical care models and strong network of 1,600 nephrologists and Cricket Health's tech-enabled care model that utilizes its proprietary informatics, StageSmart(TM) and patient engagement platforms to create an innovative, stand-alone entity poised to transform kidney care.

Rice Powell, CEO of Fresenius Medical Care, said: "This effort is an important next step in executing Fresenius Medical Care's growth strategy 2025 to further expand along the renal care continuum and to refine and grow our future operating model in Care Delivery in the U.S. as part of the FME25 transformation. In bringing together the expertise and competence of three leading partners we will be broadening our offer and adding significant value to patients with chronic kidney disease all over the U.S."

Bill Valle, CEO of Fresenius Medical Care North America and of the future Care Delivery segment for Fresenius Medical Care, said: "With leading capabilities, scale, and reach, the new company will be well positioned to transform kidney care and health equity in the U.S. This includes reducing hospital admissions and readmissions, slowing disease progression, increasing transplant referrals and rates, accelerating the transition to home dialysis, and improving clinical outcomes and quality of life for patients with lower overall costs for payors."

https://uk.finance.yahoo.com/news/fresenius-medical-care-participates-three-130005321.html?guccounter=1&guce_referrer=aHR0cHM6Ly93d3cuZ29vZ2xlLmNvbS8&guce_referrer_sig=AQAAALlr7Oo5w3xwEdP1e96ra9dpeO1Me5hgbU19gSq6Hbnk9k5202-KoUNXgkXcnq0swDj7MBSETQlaU71En6IE8PWo2jayl1WIwcbOQVPFoJ703aX8ZdcbhWocp1iXoqVmxwibIt3ZNRJUgCZ_mhFA7wpiofExyyeHgJ7fZtb3j6db

The previous information all points to the evident fact of Fresenius Medica Care (FMC) is basically a monopoly concerning the End Stage Renal Disease (ESRD) industry which points to the premise of non patient focused care, The 12 vertically integrated companies under one umbrella control every aspect of the ESRD sector of the medical industry limiting patient choices and care availability. The newest merger will make this limitation even greater allowing the local clinics to 'pick and choose' what patients they will treat which is tantamount to a death sentence for low income persons depending on Medicare and Medicaid for life-giving services. Forcing these person to not 'rock the boat' in questioning procedures or policy thus limiting personal participation in their care. This is intimidation and discriminatory practices which have not one iota of business in the medical care industry. Regardless of what tis the public persona of the Company, the actual practices at the clinic level is what matters to everyday patients.

More importantly. It truly is with the dirth of information in news releases and company statements, it appears even thought elements and persons of Fresenius Medical Care (FMC) was fined and barred from participation in Federal Medical Programs, every entity involved subsequently changed or rebranded the Company name and continued policies and practices as usual.